**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **HONEYWELL INTERNATIONAL, INC.,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **THE CLARK CONSTRUCTION GROUP, INC. d/b/a CLARK CONTRACTORS, and CLARK/JT CONSTRUCTION, a Joint Venture,** | ) ) ) ) | **Civil Action No. SA-06-CV-0125-XR** |
| **Defendants,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CITY OF SAN ANTONIO, TEXAS,** | ) | |
| **Third Party Defendant.** | ) ) | |

**ORDER**

On this date, the Court considered Third-Party Defendant City of San Antonio's ("COSA")

motion for summary judgment.[1] After careful deliberation, the Court finds that questions of material

fact exist as to when Clark-JT's breach of contract claim accrued, thus causing the applicable

limitations period to run.  Granting summary judgment based upon the four-year statute of

limitations is not proper; therefore, COSA's motion for summary judgment is DENIED (Docket No.

8).  Clark-JT's and Honeywell's joint motion to strike the affidavit of David Rathmann and

---

[1]Although styled as a "Motion for Summary Judgment," the Court finds that the motion is really a motion for partial summary judgment on Clark-JT's breach of contract claim against COSA.  COSA's motion for summary judgment does not address the Contribution / Indemnity Claim, the Breach of Implied Warranty Claim, or the Unjust Enrichment / Quantum Meruit Claim.

accompanying Exhibits A-1 and A-2 is DENIED (this motion to strike is contained in the joint response to COSA's motion for summary judgment, Docket No. 12, Pgs. 3-6). Clark-JT's and Honeywell's joint motion to strike Exhibit B, the affidavit of George Baldwin (regarding COSA's attorney's fees), is DENIED as moot (this motion to strike is contained in the joint response to COSA's motion for summary judgment, Docket No. 12, Pgs. 3-6). Clark-JT's and Honeywell's joint motion to strike Exhibit 1 of COSA's reply and Exhibit B of COSA's supplemental reply is GRANTED (Docket No. 23).

## FACTUAL & PROCEDURAL BACKGROUND

This action relates to the Henry B. Gonzalez Convention Center Expansion and Renovation Project in San Antonio, Texas ("The Project"). In 1997, the City of San Antonio ("COSA") hired 3D/International, Inc. ("3D/I") to act on the city's behalf as construction managers for the Project. COSA then entered into a prime construction agreement ("The Contract") with Clark/JT Construction ("Clark-JT") to furnish labor and materials as general contractor for the Project.

In February 1998, Clark-JT signed a subcontract with Honeywell International, Inc. ("Honeywell") to provide labor and materials primarily for the Project's fire, security, and communications systems. In January of 2001, Honeywell submitted its initial claim to Clark-JT demanding payment of $8,734,545.00.[2] Honeywell claimed that this amount was due for excess work and cost overruns caused by various delays in the Project.[3] Clark-JT alleges that it objected

---

[2]This amount was for Project work and excess work, representing unpaid actual and estimated job costs at that time, including overhead, profit, claim costs, interest, and attorneys' fees.

[3]Honeywell claims that the COSA was aware of defects in the Project's architectural designs but did not disclose them to the contractors during the bidding process. Consequently, bids on Project work were based upon the use of normal means and methods of construction.

-2-

to this claim and, at Honeywell's suggestion, submitted it to COSA.  Clark-JT also alleges  that on

or about October 17, 2001, COSA's representative, 3D/I, notified Clark-JT that the Honeywell claim

had been rejected.  On November 20, 2001, Clark-JT submitted a written request to increase the total

cost of the Contract by approximately $5.4 million.   This resulted in Field Alteration #116 (FA #

116), an  agreement  intended  to  resolve  various  outstanding  disputes  between  Clark-JT,  its

subcontractors, and COSA.  COSA did not agree in FA # 116 to pay the Honeywell claim; instead,

FA # 116  merely  allowed  Honeywell  to resubmit  its  previously  rejected  claim.   After  several

revisions, it was agreed that FA # 116 would increase the final value of the Contract  to $127.2

million and that Clark-JT would be allowed to resubmit the Honeywell claim at any time before

December 31, 2001.  FA #116 stated that the if the Honeywell claim was properly submitted by

December 31, 2001, then it "will be resolved through the existing contract provisions for resolution

as applicable."  FA #116 was executed by Clark-JT on December 3, 2001, by 3D/I on December 5,

2001,and by COSA on December 13, 2001.  The agreement attached to FA #116 was executed by

Clark-JT on December 3, 2001, by 3D/I on December 11th, 2001, and by COSA on December 13,

2001.

FA #116 did not lead, however, to a resolution of Honeywell's claim against Clark-JT.

Settlement  negotiations  between  Honeywell,  Clark-JT,  and  COSA  allegedly  continued  until

Honeywell brought suit against Clark-JT in March of 2003.  Clark-JT alleges that COSA continued

to  participate  in  settlement  discussions  even  after  Honeywell  filed  suit.   When  the  settlement

proceedings reached a stalemate, Clark-JT  impleaded COSA as a Third-Party Defendant and sought

Once the defects were discovered after the Honeywell subcontract was executed and work began,
significant time delays and extra work were necessary to remedy the problem.  This resulted in
extra costs not originally contemplated by the parties at the time of bidding.

relief against COSA for breach of contract, quantum meruit, and breach of warranty on December 7, 2005 in the Federal District Court for the Northern District of Texas. COSA then successfully moved to transfer venue to the Western District of Texas.

Clark-JT and Honeywell object to several exhibits submitted by COSA in support of its motion for summary judgment. In their joint response to COSA's motion for summary judgment, Clark-JT and Honeywell move to strike the affidavit of David Rathmann and attached exhibits A-1 and A-2 (regarding Certificates of Substantial Completion and Temporary Certificates of Occupancy) because they are not relevant and/or are not the "best evidence." In the alternative, Clark-JT and Honeywell argue that the probative value of this evidence is substantially outweighed by unfair prejudice and confusion of the issues. Additionally, in their joint response to COSA's motion for summary judgment, Clark-JT and Honeywell move to strike the affidavit of George Baldwin (regarding COSA's attorney's fees). In a separate motion, Clark-JT and Honeywell move to strike Exhibit 1 of COSA's reply to its motion for summary judgment and Exhibit B of COSA's supplemental reply. They argue that these exhibits are (1) not certified or supported by affidavit, (2) irrelevant, (3) inadmissible hearsay, and (4) unduly prejudicial.

## LEGAL ANALYSIS

### I.

**A.     Clark-JT and Honeywell's joint motion to strike the affidavit of David Rathmann and accompanying Exhibits A-1 and A-2 is DENIED. However, the evidence is of limited probative value and will be considered by the Court for limited purposes.**

Material submitted in support of a motion for summary judgment must set forth evidence that would be admissible if presented in appropriate form at trial. FED. R. CIV. P. 56(e). Supporting materials designed to establish issues of fact in a summary judgment proceeding, such as documents

and exhibits, "must be established through one of the vehicles designed to ensure reliability and veracity—depositions, answers to interrogatories, admissions and affidavits." *Friedel v. Madison,* 832 F.2d 965, 970 (7th Cir. 1987). When a party seeks to offer evidence through documents or exhibits, they must be identified by affidavit or otherwise made admissible in evidence. *Id.* However, uncertified documents may be considered by a court if not challenged. *Davis v. Howard*, 561 F.2d 565, 569 (5th Cir. 1977).

Exhibit A-1 consists of several unsigned Certificates of Substantial Completion ("CSCs") issued by 3D/I as various phases of the Project neared completion. Instead of producing signed and dated copies of the original CSCs, it appears that 3D/I produced unsigned, draft copies from its computer. Each CSC that 3D/I provided contains a typed "Date of Issuance," and each CSC contains four blank signature and date lines for the "Construction Manager," "Architect," "Contractor," and "Owner" to certify that certain portions of the project are substantially complete. Since none of the CSCs are signed, there is no way of knowing if or when the CSCs were ever executed and to whom they were delivered. These documents are authenticated as 3D/I's business records in a supporting affidavit sworn to by David Rathmann, Senior Project Manager of 3D/I.

Exhibit A-2 contains several Temporary Certificates of Occupancy ("TCOs") to cover COSA's use of certain portions of the Project. Each TCO expires one month after its date of issuance, is labeled as a "copy," and is signed by COSA's Director of Development Services. These documents are authenticated as 3D/I's business records in a supporting affidavit sworn to by David Rathmann, Senior Project Manager of 3D/I.

Clark-JT and Honeywell argue, correctly, that there is no evidence in the record that the CSCs were executed, that the certificates became part of the construction documents, or that the

entire Project was ever completed.  The Court will admit these documents as the business records of 3D/I; however, the Court considers them to be of limited probative value.  The content of these CSCs indicate that 3D/I generated them on their "Date of Issuance."  These CSCs constitute some evidence that 3D/I considered various phases of the Project substantially complete on the date of issuance.  While these CSCs might constitute some evidence of 3D/I's state of mind regarding the status of the project, they do not constitute substantive evidence that various phases of the project were in fact substantially complete because they were not executed by the "Construction Manager," "Architect," "Contractor," and "Owner."  Additionally, the Court finds that there is no evidence indicating that these CSCs were ever transmitted to Clark-JT or Honeywell.  Since there is no evidence that these particular CSCs were ever executed or transmitted to Clark-JT or Honeywell, the Court will NOT consider these documents as evidence (1) that the various phases of the Project were in fact substantially complete or (2) that Clark-JT and Honeywell considered the various phases of the Project as substantially complete.

The CSCs and TCOs are admissible at trial under Rule 401 if they have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  The CSCs (Exhibit A-1) are evidence of 3D/I's (but not Clark-JT's or Honeywell's) state of mind concerning the substantial completion of various phases of the Project.  This is clearly a fact of consequence when completeness of performance is at issue.  Furthermore, the TCOs (Exhibit A-2) are evidence that phases of the Project reached a state of completion that COSA considered safe for use by members of the general public. Thus, exhibits A-1 and A-2, taken together, are relevant to show whether 3D/I and COSA considered the phases of construction specified in the certificates as substantially

completed.

Clark-JT and Honeywell object to Exhibit A-1 under Federal Rule of Evidence 1002.  They argue that, as unsigned duplicates, these exhibits are not the best evidence to prove that the certificates became a part of the contract.  In making this objection, Clark-JT and Honeywell misconstrue the nature of the "best evidence rule."  The best evidence rule only applies when a party seeks to prove the contents of a writing, recording, or photograph without producing the original writing.  FED. R. EVID. 1002.  Clark-JT and Honeywell are not really objecting to the content of the documents; they are objecting to the evidentiary significance of that content.  As the Court discussed previously, the evidentiary significance of this content is limited because 3D/I failed to demonstrate that the draft copies of the CSCs were ever executed or delivered to other parties.

In addressing the "best evidence rule" objection, the question is whether the unsigned duplicates constitute "original writings" for purposes of the Federal Rules of Evidence.  Duplicates are admissible to the same extent as the original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.  For a document to be a "duplicate," it must be a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic re-recording, or by chemical reproduction, or by other equivalent techniques which accurately reproduces the original.  FED. R. EVID. 1001(4). In the absence of any suggestion that the content of a duplicate is incorrect, it is not error to admit the duplicate into evidence. *See Myrick v. United States*, 323 F.2d 421 (5th Cir. 1963). FED. R. EVID. 1003.  "Photocopies are allowed into evidence as if they were originals." *Buziashvili v. Inman*, 106 F.3d 709, 717 (6th Cir. 1997).  Clark-JT and Honeywell do not really dispute the

content of the certificates; they simply contend that the original, signed certificates would provide the "best evidence" to support certain factual conclusions.[4]  The authenticity of the substantial completion certificates is sworn to by an agent of the entity that originally issued those certificates. Thus, no genuine question has been raised as to the authenticity of the unsigned, draft CSCs produced by 3D/I.  No compelling reason supports a finding that admitting Exhibit A-1 would be unfair.

Finally, Clark-JT and Honeywell object to Exhibit A-2 under Federal Rule of Evidence 403. This objection is without merit.  The TCOs are probative of the progress of performance and the various rights of the parties under the contract.  As to the contention that the certificates confuse the issues, the Court is confident in its ability to properly weigh the evidence and determine whether there are genuine issues of material fact.  Exhibits A-1 and A-2 are proper summary judgment evidence and will be considered for that purpose.  The joint motion to strike the affidavit of David Rathmann and accompanying Exhibits A-1 and A-2 is DENIED (this motion to strike is contained in the joint response to COSA's motion for summary judgment, Docket No. 12, Pgs. 3-6).[5]

**B.      Clark-JT and Honeywell's joint motion to strike Exhibit 1 of COSA's reply to its**

---

[4]Clark-JT and Honeywell object to the conclusions that the Court might draw from the content of the writings, not to the actual content of the writings.  They contend that the certificates relate to completion of portions of the project, not to the entire project.  They contend that the signed certificates would be the "best evidence" to prove that the certificates became part of the contract documents.  The Court finds that the evidence is admissible, and the conclusions the Court might draw from that evidence is not objectionable.  These CSCs were draft documents kept by 3D/I in its normal course of business.  The Court has already held that the CSCs and the TCOs have limited probate value and will only be considered for limited purposes.

[5]The Court agrees with Clark-JT's and Honeywell's argument that the COSA provided no basis for its request for recovery of attorney's fees in its motion for partial summary judgment. However, since the Court denies COSA's motion for partial summary judgment, the request to strike the affidavit of George Baldwin (concerning COSA's attorney's fees) is DENIED as moot.

**motion for summary judgment and Exhibit B of COSA's supplemental reply is GRANTED**.

Exhibit 1 to COSA's reply is 3D/I's risk assessment of the Honeywell claim. Exhibit B to COSA's supplemental reply is a letter from Honeywell notifying Clark-JT that Honeywell considered its work substantially complete. COSA failed to properly authenticate these exhibits with supporting affidavits as required by Rule 56(e). Because these documents are stricken from the summary judgment record on this ground, no ruling on Clark-JT and Honeywell's hearsay and relevancy objections is necessary at this time. Honeywell's and Clark-JT's joint motion to strike these two exhibits is GRANTED (Docket No. 23).

## II.

**A.    COSA argues that the action initiated by Clark-JT is barred by the four-year statute of limitations.**

In its motion for summary judgment, COSA maintains that the action initiated by Clark-JT is barred by the four-year statute of limitations for breach of contract claims under TEX. CIV. PRAC. & REM. CODE §16.051.[6]  *See Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) (four-year statute of limitations for breach of contract claims in Texas). In support of this claim, COSA offers two theories under Texas contract law. First, COSA argues that Clark-JT's cause of action accrued, and the applicable statute of limitations began to run, when the Project was deemed substantially complete on or about August 30, 2001. In the alternative, COSA contends that the limitations period started to run when Clark-JT breached the contract and invoked the contractual dispute resolution

---

[6]COSA's motion for summary judgment addresses only the breach of contract claim. As such, this Order is limited to the scope of COSA's motion and does not address Clark-JT's other claims.

framework in October of 2001.[7] Under either theory, COSA argues, the decision to wait until December 7, 2005 to file suit places Clark-JT's breach-of-contract claim outside of the four-year limitations period. Because this lawsuit is time-barred, COSA asserts that it is entitled to summary judgment.

**B.      Standard of review for summary judgment.**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of showing that there is no genuine issue as to a material fact and that the moving party is entitled to judgment as a matter of law. *Willis v. Roche Biomedical Lab., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In making this determination, the court will review the evidence in the record and disregard the evidence favorable

---

[7]In the joint response to COSA's motion for summary judgment, one of the arguments advanced by Clark-JT and Honeywell in opposition to the motion is that the statute of limitations does not begin to run until a claimant suffers injury. COSA's replies that Clark-JT suffered injury as soon as it learned of Honeywell's claim in January of 2001. Clark-JT argues, correctly, that this is a claim for breach of its contract with COSA, not its contract with Honeywell. As such, the date on which a dispute arose between Clark and Honeywell is not relevant to this inquiry. Clark-JT has presented evidence that it was still working under the terms of the contract when COSA gave its permission to resubmit the Honeywell claim on or about December 13, 2001. The resubmitted claim was finally rejected and constructive notice of an injury was received by Clark-JT on January 31, 2002. This date places Clark-JT's cause of action within the statutory period.

to the moving party that the jury is not required to believe. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 135 (2000). In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.4 (1986). If the record, viewed in this light, could not lead a rational trier of fact to find for the party opposing the motion, summary judgment is proper.

To succeed on a summary judgment motion based on a statute of limitations defense, the movant must establish, as a matter of law, entitlement to summary judgment by conclusively proving that no genuine issue of material facts exist as to the limitations defense. *See Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex. 1983). In particular, the movant must prove when the cause of action accrued and that the claimant filed suit after the limitations period ran. *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex. 1990).

## C.    The four-year statute of limitations does not bar Clark-JT's breach of contract claim against COSA.

Under Texas law, the statute of limitations for a breach-of-contract claim does not begin to run until a cause of action accrues. *Atkins v. Crosland*, 417 S.W.2d 150, 152 (Tex. 1967). A cause of action for breach of contract does not accrue until all conditions precedent to the parties' right to file suit have been satisfied. *See Cummins & Walker Oil Co. v. Smith,* 814 S.W.2d 884, 886-887 (Tex. App.—San Antonio 1991, no writ); *Dunn v. Reliance Life & Accident Ins. Co.*, 405 S.W.2d 389, 391 (Tex. Civ. App.—Corpus Christi 1966, writ ref'd n.r.e.); *Godde v. Wood*, 509 S.W.2d 435, 441 (Tex. Civ. App.—Corpus Christi 1974, writ ref'd n.r.e.). Clark-JT filed it's breach-of-contract claim on December 7, 2005. Counting backwards from that date, the Court must decide whether

there are no genuine issues as to the material fact that all conditions precedent to a right to file suit

for breach of contract had been met before December 7, 2001.

Clark-JT argues that its contract with COSA created a dispute resolution process that was

made an express condition precedent to either party's right to file a lawsuit.[8]  Clark-JT cites Article

52.1 on page 68 of the Contract, which reads as follows:

> 52.1 Generally.  Except as otherwise expressly provided in the Contract Documents,
> all disputes and other matters in question between the Contractor and the Owner
> arising out of or relating to the Contract Documents or the breach thereof, except for
> Claims of the Contractor which have been waived by the acceptance of final payment
> pursuant to Article 47 or because they were not timely filed shall be decided by a
> District Court of Bexar County in which the Project is located, unless the parties
> mutually agree otherwise.  Provided, however, that the Dispute Review Procedures
> set forth herein below shall be followed *and will be a condition precedent to either
> party's right to file a lawsuit concerning any matters arising out of or relating to the
> Contract Documents, or breach thereof.*  (emphasis added).

Under the contractual dispute resolution framework, Clark-JT was permitted to resubmit to COSA

any rejected claims or requests for changes to the Contract.[9] (Pg. 68, Article 51.4). Clark-JT argues

---

[8]In their joint response to COSA's motion for summary judgment, Clark-JT and
Honeywell also argue that COSA is estopped from claiming a limitations defense because it
encouraged and participated in settlement negotiations.  Clark-JT claims that it relied, to its
detriment, upon COSA's repeated assurances that a settlement would be reached and filed suit
only when it became clear that a settlement was impossible.  However, COSA correctly argues
that Clark-JT has failed to plead and prove all of the elements necessary for equitable estoppel of
a limitations defense under Texas law.  *See Gulbenkian v. Penn*, 252 S.W.2d 929, 932 (Tex.
1952).  There is no evidence indicating that COSA made false representations of material fact
concerning the settlement negotiations to either Clark-JT or Honeywell.  COSA's repeated
assurances that a settlement would be reached constituted a overly-optimistic prediction or
opinion concerning future events, not a false representation of past or present fact.

[9]The Prime Contract requires the submission of a claim, or a change order request
whenever a disputed change order is at issue, to the Construction Manager with a request for a
formal decision by the Construction Manager and the Owner.  After reviewing the claim and the
Construction Manager's recommendation, the Owner is to conduct a settlement conference with
the claimant.  If the settlement conference is unsuccessful, the Owner issues a written decision
regarding the claim.  The Contractor is then to notify the Owner of whether it accepts or rejects

that it was working within this framework when it began negotiations with COSA to resubmit the Honeywell Claim in November of 2001. Clark-JT has submitted evidence of negotiations among the parties over the Honeywell claim that continued up until FA #116 was fully executed on December 13, 2001. COSA claims that Clark and Honeywell never actually availed themselves of the dispute resolution framework. However, Article 51.4 of the Contract provides that COSA was responsible for conducting a settlement conference between the parties if it rejected any claims submitted by Clark-JT. Clark-JT has presented evidence that it asked permission to resubmit the Honeywell claim during settlement negotiations that occurred after the claim was initially rejected, and permission was given by COSA in FA #116. COSA has presented no evidence suggesting that these negotiations were not a part of the claim resolution procedures set forth in Article 51.4. At the very least, therefore, there is a genuine dispute among the parties as to whether Clark-JT and COSA were involved in the dispute resolution process as of December 7, 2001.

In the alternative, COSA interprets Article 52.1 to mean that a breach of contract had to occur before any resort to the resolution process could take place. The general rule, COSA argues, is that a breach of contract cause of action accrues, and the statute of limitations begins to run, when the non-breaching party becomes constructively aware of the breach. *Rose v. Baker & Botts*, 816 S.W.2d 805, 810 (Tex. App.—Houston [1st Dist.] 1991, writ denied). COSA argues that if Clark-JT began negotiations over the Honeywell claim in November of 2001 under the dispute resolution process, it must have breached the Contract sometime before that date. However, the general rule does not apply here because COSA and Clark-JT expressly agreed that a condition precedent to any

---

the Owner's decision. Upon rejection of the Owner's decision by the Contractor, the claim is referred to the Disputes Review Board ("DRB") for further determination. Under the Prime Contract, a final decision of the entire DRB is a "condition precedent" to the Contractor's right to file suit against the Owner. Desko Aff. at ¶ 4.

right to file suit was the submission of all claims to the dispute resolution process, even for alleged breaches of the Contract.[10]  "People are free to contract as they choose, limiting their rights and duties in ways that are unusual or absurd or unprofitable." *TA Operating Corp. v. Solar Applications Eng'g, Inc.*, 191 S.W.3d 173, 181 (Tex. App.—San Antonio 2005, pet. filed) (quoting 8 CORBIN ON CONTRACTS § 36.2).  "When parties have made their contract, it is the duty of the courts to enforce it as they have elected to make it."  *Rankin v. Rhea*, 164 S.W. 1095, 1097 (Tex. Civ. App.—Amarillo 1914, no writ).  Even if Clark-JT was in material breach of the Contract before December 7, 2001, the parties elected to limit their right to a cause of action for breach of contract. The general rule that a cause of action accrues at the time of breach has been superseded by mutual agreement.  It is this contractual agreement, rather than the default rule, that must be enforced by this Court.  As long as Clark-JT was involved in the dispute resolution process, it was operating under the terms of the Contract and no cause of action accrued.

Under its alternate theory, COSA argues that a cause of action accrues "when facts come into existence that authorize a claimant to seek a judicial remedy." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex.1998).  It is undisputed that the contract between

---

[10]The Court does not mean to imply that a party may hold a condition precedent in abeyance indefinitely in order to toll the statute of limitations.  A condition precedent may be waived if performance of the condition is unreasonably delayed.  *Godde v. Wood*, 509 S.W.2d at 442.  COSA argues that Clark-JT and Honeywell unreasonably delayed and did not avail themselves of the contractual dispute resolution procedure.  COSA argues that "[P]laintiff may not, by refusing to perform the condition [precedent], toll the running of the statute and reserve for himself the right to sue within the statutory period from such time as he decides" fit to file suit.  *See Aetna Casualty and Surety Co. v. State*, 86 S.W.2d 826, 831 (Tex. Civ. App.—Fort Worth 1935, no writ).  COSA presented no evidence that Clark-JT or Honeywell exhibited bad faith by using the dispute resolution procedure as a stalling tactic to prevent the running of the limitations period.  At the very least, the Court finds that a question of material fact exists as to whether Clark-JT and Honeywell "failed or refused to perform the condition [precedent]."

-14-

COSA and Clark-JT is a "continuing contract" under Texas Law. *See County of Dallas Levee Improvement Dist. v. Halsey, Stuart & Co.*, 202 S.W.2d 957, 961 (Tex. Civ. App.—Amarillo 1947, no writ).[11] Under the general rule for continuing contracts facts authorizing a claimant to seek a judicial remedy come into existence when either (1) the work is completed, (2) the contract is terminated in accordance with its terms, or (3) the contract is anticipatorily repudiated by one party and that repudiation is adopted by the other party, whichever is sooner. *Hubble v. Lone Star Contracting Corp.*, 883 S.W.2d 379, 382 (Tex. App.—Corpus Christi 1994, writ denied). COSA contends that work on the Project was completed, or substantially completed, and the statute of limitations began to run, before December 7, 2001. In response, Clark-JT argues that COSA has not introduced a Certificate of Final Completion[12] into the record that would be necessary to prove that work on the project was completed before December 7, 2001.

Relying on the holding in *Godde*, COSA claims that substantial completion of the Project is legally equivalent to total completion of the work. Consequently, the statute of limitations began to run on August 31, 2001, the date COSA deemed the Project substantially complete.[13] The

---

[11]A contract is a continuing contract "where the services rendered are divided into numerous parts and where it is continuous, indivisible, and provides for some payments to be made at stated intervals or in installments when proper statements are rendered . . . ." *County of Dallas Levee Improvement Dist.,* 202 S.W.2d at 961.

[12]Issuance of this certificate was a condition precedent to final payment under Articles 41.1 and 41.3 of the Contract.

[13]In furtherance of this claim COSA, has introduced several "Certificates of Substantial Completion" it contends were issued as each phase of the Project neared completion. The last of these is dated September 17, 2001 and purports to make August 30, 2001 the date of substantial completion of a portion of the Project. Additionally, COSA released several temporary "Certificates of Occupancy" to cover the general public's use of certain portions of the Project as they became available. COSA claims that these certificates mark the ending of the contract around June of 2001.

language COSA relies upon to support this theory reads  "substantial performance being regarded as full performance, *so far as a condition precedent to a right to recover thereunder is concerned*." 509 S.W.2d at 441 (emphasis added).  The court finds COSA's interpretation of this language unpersuasive.  Substantial performance is recognized as a constructive condition precedent to the right to file suit for breach of contract.  *Carr v. Norstok Bldg. Systems, Inc.,* 767 S.W.2d 936, 940 (Tex. App.—Beaumont 1989, no writ).  However, "a cause of action requires both the existence of the right and facts sufficient to constitute a cause of action." *Cummins & Walker Oil Co. v. Smith,* 814 S.W.2d 884, 887 (Tex. App.—San Antonio 1991, no writ) (holding that the statute of limitations on a breach of contract claim does not accrue until all conditions precedent are satisfied). Substantial performance, standing alone, does not constitute facts sufficient to authorize a party to seek a judicial remedy *under this contract*.  Unlike this contract, the contract in *Godde* did not include a dispute resolution process that was expressly made a condition precedent to filing suit.  *See Godde*, 509 S.W.2d at 443 (stating that "[i]f a demand is an integral part of a cause of action, or a condition precedent to the right to sue, the statute [of limitations] does not begin to run until a demand is made, unless the demand is waived or is unreasonably delayed.")  Moreover, no jurisdiction in Texas has ever held that substantial performance of a contract is equivalent to full performance so as to entitle recovery of the full contract price .  *Carr*, 767 S.W.2d at 940; *Shaddock v. Storm King Window Co.*, 696 S.W.2d 271, 273 (Tex. App.—Wichita Falls 1985, no writ).

   *Godde* is entirely consistent with this premise.[14]  Even if the Court agrees that, as a general

---

[14]In *Godde*, a homebuilder's breach of contract claim was dismissed for being filed after Texas' two year statute of limitations for oral contracts had run.  509 S.W.2d  435. The court held that substantial completion of the work contemplated by the contract occurred on or about November 11, 1969.  *Id.* at 439. Work under the contract was "totally completed" by December 12, 1969.  Any services rendered after that date were not a part of the contract specifications.  *Id.*

rule, the statute of limitations begins to run for a breach of contract cause of action any time a right to bring suit under the contract accrues, the fact remains that parties to a contract are free to waive or alter their rights —even the right to file a lawsuit. Indeed, parties to a contract are free to give up entirely their right to a judicial remedy for breach of contract in favor of arbitration. *See Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 268 (Tex. 1992).  Where, as here, the parties have agreed to be bound by express conditions precedent to a right to sue, the default rule that a cause of action accrues upon completion of the work under a continuing contract does not apply.  *See Millgard Corp. v. McKee/Mays*, 831 F.2d 88, 90-91 (5th Cir. 1987) ("The general rule [is] that a right to recover under a contract accrues at the time performance is completed, unless otherwise specified in the contract . . . . [A]s will be seen, the existence of provisions 'otherwise specified in the contract' renders this case different from the general accrual rule.").  The provisions of the contract at issue explicitly stated that the "Dispute Review Procedures set forth herein below shall be followed and will be a condition precedent to either party's right to file a lawsuit concerning any matters arising out of or relating to the Contract Documents, or breach thereof."  Therefore, Clark-JT's breach of contract claim against COSA did not accrue until the dispute review procedures of the contract were first exhausted or repudiated.

This case is similar to *Millgard*.  In *Millgard*, Dallas County contracted with McKee/Mays in 1978 for the construction of the Lew Sterrett Justice Center.  831 F.2d at 89.  McKee/Mays subsequently awarded the caisson foundations subcontract to Millgard.  *Id.*  In 1979, shortly after

---

at 439.  December 12, 1969 was also the date the builder received notice of the homeowner's repudiation.  The builder, however, waited until December 16, 1971 to file suit.  *Id*. at 443.  The opinion makes clear that the *Godd*e court considered the date of total completion (and repudiation),  not the date of substantial completion, to be the strongest indication of the date on which the builder's cause of action accrued.

beginning work on the project, Millgard encountered subsurface conditions different from those previously reported by the project's geotechnical engineers.  *Id.*  According to Millgard, these unstable soil conditions necessitated approximately fifty percent more concrete in the foundation piers than originally anticipated, as well as the use of more expensive equipment and techniques. *Id.*  The subcontract provided for an equitable adjustment of the contract price if concealed conditions were encountered during construction.  *Id.*  After completion of the construction work, the parties continued to negotiate an equitable adjustment of the contract price for cost overruns associated with allegedly concealed conditions.  *Id.*  In May of 1980, Millgard formally requested additional compensation of $711,264, which was 25% above the original contract price.  *Id.*  After consultation with the architects and geotechnical experts, McKee/Mays believed that there was no unexpected subsurface conditions, and on June 12, 1980, it rejected Millgard's request for additional compensation.  *Id.* at 90. Millgard instituted a diversity action against McKee/Mays for, *inter alia*, breach of contract on June 7, 1984.  *Id.*

Millgard asserted that its breach of contract claim accrued no sooner than June 12, 1980, when McKee/Mays rejected its request for additional compensation, or alternatively on June 16, 1980, when Millgard learned of the rejection.  *Id.*  The district court held that Millgard's breach of contract claim accrued no later than May 2, 1980, when Millgard made written demand for the additional amount; therefore, Millgard's claim was barred by the four-year statute of limitations.  *Id.* The Fifth Circuit reversed, holding that the breach of contract claim was filed within the four-year limitations period.  *Id.* at 91.  The Fifth Circuit stated, "We agree with Millgard that in this case, the proper test [for determining when the breach of contract claim accrued for limitations purposes] is based upon the parties' contract and derives from McKee[/Mays]'s repudiation of Millgard's proposed

Change Order [made pursuant to the equitable adjustment procedure]." *Id.*

In ruling on Defendant's four-year statute of limitations defense under Texas law, the Fifth

Circuit stated the following:

> Under these circumstances, the parties were continuing to act under the express provisions of the contract [the equitable adjustment procedure] after Millgard's construction work was completed, and we find that breach occurred as a matter of law no earlier than June 12, 1987 [the date Defendant repudiated the Change Order made by Plaintiff pursuant to the equitable adjustment procedure].   Millgard's contract action was thus filed within the four year prescriptive period.

*Id.*

> Contrary to the suggestion of McKee/Mays, our holding does not imply that every breach of contract action accrues only upon the occurrence of demand and refusal. It should be clear that the requirements of the contract between these parties leads to the conclusion that under this contract, breach occurred when McKee determined not to accept Millgard's Change Order as falling within Article 12 [contractual provisions for the equitable adjustment procedure].

*Id.* at 91 fn. 3.

> Our result is supported by sound policy considerations as well.  If a contract provides a nonjudicial remedy for disputes, the nominal accrual of an action upon completion of the work thereunder might require a party to file suit before his resort to that remedy had been completed.  Our result enhances the atmosphere in which such remedies are pursued.

*Id.* at 91 fn. 4.  As long as Clark-JT was engaged in the dispute resolution process under the terms

of the contract, the date that work was substantially completed on the Contract is of little

consequence.  *Millgard* suggests that the date when Clark-JT's breach of contract claim accrued for

limitations purposes is the date when (1) either party repudiated the contractual claims resolution

procedure itself or (2) COSA repudiated a final offer of settlement made through the claims

resolution procedure.  Clark-JT has presented evidence that it was engaged in negotiations with

COSA over the Honeywell claim up until December 13, 2001, if not longer.[15]  By contrast, COSA has not submitted any evidence to show that these negotiations were in violation or constituted a repudiation of the contractual claims resolution procedure.  Construing this evidence in a light most favorable to the non-moving party, there are, at the very least, disputed issues of fact as to whether the parties were still operating under the express conditions of the contract as of December 7, 2001.

## CONCLUSION

COSA has presented no evidence to refute Clark-JT's affidavits and documents demonstrating that all parties were participating in the contractually mandated dispute resolution framework within the four-year limitations period.  Construing this evidence in a light most favorable to the non-moving party, granting COSA's motion for summary judgment based upon a limitations defense is not proper.  The Third-Party Defendant's motion for summary judgment is DENIED (Docket No. 8). Clark-JT's and Honeywell's joint motion to strike the affidavit of David Rathmann and accompanying Exhibits A-1 and A-2 is DENIED (this motion to strike is contained in the joint response to COSA's motion for summary judgment, Docket No. 12, Page 3-6).  Clark-JT's and Honeywell's joint motion to strike Exhibit B, the affidavit of George Baldwin (regarding COSA's attorney's fees), is DENIED as moot (this motion to strike is contained in the joint response to COSA's motion for summary judgment, Docket No. 12, Pgs. 3-6). Clark-JT's and Honeywell's joint motion to strike Exhibit 1 of COSA's reply and Exhibit B of COSA's supplemental reply is GRANTED (Docket No. 23).

---

[15]The undisputed evidence indicates that COSA signed FA # 116 on December 13, 2001. FA # 116 stated that Clark-JT could submit Honeywell's claim by December 31, 2001.  It is important to note that FA # 116 was signed after December 7, 2001.  The Court finds that a question of material fact exists as to whether COSA's signing of FA # 116 was in furtherance of the dispute resolution process.

It is so ORDERED.

SIGNED this 11th day of October, 2006.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE